Per Curiam.
 

 Defendant appeals by right from his jury trial conviction of first-degree felony murder, MCL 75Q.316(l)(b), and his sentence of life in prison without parole. We affirm.
 

 Defendant first asserts that his conviction of felony murder is improper because his conviction of murder and the predicate felony, in this case first-degree child abuse, arise out of the same act—a blow to the skull of Crystal Goble, who was 3V2 years old when she died as a result of bleeding and swelling in her brain. Defendant argues that the felony-murder statute does not permit a conviction where there are not two distinct crimes: rather, felony murder applies only where a second-degree murder is committed in the perpetration of one of the enumerated felonies in the statute. We disagree with defendant’s argument.
 

 At the time of this offense,
 
 [1]
 
 the Michigan felony-murder statute provided:
 

 (1) A person who commits any of the following is guilty of first degree murder and shall be punished by imprisonment for life:
 

 
 *411
 
 (b) Murder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, a major controlled substance offense, robbery, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, or kidnapping. [MCL 750.316(l)(b).]
 

 In
 
 People v Jones,
 
 209 Mich App 212, 214; 530 NW2d 128 (1995), this Court addressed a defendant’s argument that his conviction of felony murder was improper because “the predicate felony of breaking and entering with the intent to commit an assault is not a felony independent of the homicide” that occurred in that case. Similarly, instant defendant complains that his assault that fractured Goble’s skull cannot support “both the predicate felony and the murder itself.” The defendant in
 
 Jones
 
 relied on
 
 People v Wilson,
 
 1 Cal 3d 431; 82 Cal Rptr 494; 462 P2d 22 (1969), in which the Supreme Court of California applied the merger doctrine to ameliorate the effect of that state’s felony-murder law.
 
 Jones, supra
 
 at 214. The California Court reasoned that “[w]here a person enters a building with an intent to assault his victim with a deadly weapon, he is not deterred by the felony-murder rule. That doctrine can serve its purpose only when applied to a felony independent of the homicide.”
 
 Wilson, supra
 
 at 440. This Court in
 
 Jones
 
 distinguished the Michigan felony-murder statute from the California law on the basis of their purposes. While the Michigan statute was designed to “ ‘graduate punishment and ... [to serve] to raise an already established murder to the first-degree level,’ ” the California common-law rule was designed to have a deterrent effect.
 
 Jones, supra
 
 at 215, quoting
 
 People v Aaron,
 
 409 Mich 672, 719; 299 NW2d 304 (1980).
 
 *412
 
 This Court also noted that “[g]iven our requirement that first-degree felony murder requires an additional mens rea besides the intent to commit the underlying felony, we conclude that defendant’s reliance on
 
 Wilson
 
 is misplaced.”
 
 Jones, supra
 
 at 215. This Court found further support for its conclusion in the language of the statute itself, stating that “the statute clearly allows all murder committed in the peipetration or attempted perpetration of the enumerated felonies to be treated as first-degree murder.”
 
 Id.
 

 The rationale of
 
 Jones
 
 applies to the instant case. Here, defendant asserts that because his crime was a single blow to Goble’s head that fractured her skull, he cannot be simultaneously convicted of first-degree child abuse and second-degree murder resulting in a conviction of felony murder. However, as this Court noted in
 
 Jones,
 
 Michigan’s felony-murder statute serves to raise an established murder to first-degree murder and “makes no distinctions for the commission of enumerated felonies with assaultive intent against the murder victim.”
 
 Id.
 
 In the present case, the jury convicted defendant of second-degree murder. In order to convict defendant of this crime, the jury must have concluded that defendant acted with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm was the probable result.
 
 People v Djordjevic,
 
 230 Mich App 459, 461-462; 584 NW2d 610 (1998). The jury was thus satisfied that defendant had acted with malice. Moreover, the jury convicted defendant of felony murder, which required it to find that defendant had committed first-degree child abuse. That crime requires that a defendant knowingly or intentionally
 
 *413
 
 causes a child serious physical harm. MCL 750.136b(2). Thus, the jury’s verdict supports the conclusion that defendant committed murder while perpetrating one of the enumerated felonies in the statute. Moreover, because the jury found that defendant possessed both the malice to commit murder and the intent necessary to commit first-degree child abuse, defendant’s argument is without merit.
 

 Defendant next argues that the trial court abused its discretion by admitting evidence that defendant had faced previous allegations of child abuse. Defendant asserts that the evidence of the previous incident should not have been admitted because it was not probative of any material issue and because its probative value was substantially outweighed by the prejudicial effect inflicted on defendant’s case. We disagree.
 

 MRE 404(b) governs admission of evidence of bad acts. It provides:
 

 (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.
 

 Use of bad acts as evidence of character is excluded, except as allowed by MRE 404(b)(1), to avoid the danger of conviction based on a defendant’s history of misconduct.
 
 People v Golochowicz,
 
 413 Mich 298, 308; 319 NW2d 518 (1982). To be admissible under MRE 404(b)(1), bad acts evidence must satisfy three
 
 *414
 
 requirements: (1) it must be offered for a proper purpose, (2) it must be relevant, and (3) its probative value must not be substantially outweighed by its potential for unfair prejudice. A proper purpose is one other than establishing the defendant’s character to show his propensity to commit the offense.
 
 People v VanderVliet,
 
 444 Mich 52, 74-75; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994).
 

 The evidence at issue here was testimony from defendant’s former wife, Lynn Vitanovski, who testified that in 1992, while she was defendant’s girlfriend, defendant had been charged with abusing her daughter, Nikolina. Vitanovski testified regarding the abusive acts and defendant’s urging delay in treating the child’s injuries. The evidence that defendant inflicted the injuries on Nikolina was materially relevant. The prosecution offered this evidence to show that Goble’s injury was not the result of an accident. The case against defendant relied on circumstantial evidence that tended to show that defendant was caring for Goble when she was struck on the head and the testimony of medical experts who testified unequivocally that her injuries could not have been caused by a simple fall. Defendant claimed that he was in the shower when Goble was injured and that Goble’s mother, Julie Woodbury, accidentally injured Goble while she was disciplining her. However, Woodbury testified that she was not present when Goble was injured and that defendant told her that Goble was accidentally injured while he was in the shower. Because it formed part of the basis of defendant’s defense, whether Goble’s injuries were accidental was a material issue at trial.
 

 
 *415
 
 Vitanovski’s testimony was probative of whether Goble’s injuries were accidental because the incident involving her child was similar to that involving Goble. As our Supreme Court noted in
 
 People v Crawford,
 
 458 Mich 376, 393; 582 NW2d 785 (1998), quoting Imwinkelried, Uncharged Misconduct Evidence, § 3:11, p 45, where a defendant’s willfulness is an issue, “ ‘the more often the defendant commits an actus reus, the less is the likelihood that the defendant acted accidentally or innocently.’ ” Here, Vitanovski testified that defendant was alone with Nikolina when she was hurt, that defendant then showed Vitanovski that Nikolina had bruises on the back of her head, and that defendant later told Vitanovski that Nikolina must have suffered an accident. Similarly, in the instant case, the prosecution’s evidence and Woodbury’s testimony during defendant’s case-in-chief indicated that defendant had been caring for Goble when she was injured, that defendant took Woodbury to Goble, who was lying unconscious in defendant’s home, that Goble developed a bruise behind her right ear, and that defendant claimed that Goble’s injuries must have been accidental. Moreover, the children were similar in age when the incidents occurred: Nikolina was two years old and Goble was
 
 Zlk
 
 years old. The multitude of similarities between the incidents support the prosecution theory that Goble’s injuries did not result from an accident. Thus, the jury could properly infer from the similarity of the two incidents that the injury to Goble was not an accident as defendant claimed. The evidence was therefore probative for a proper purpose.
 

 Nor was the probative value of this evidence substantially outweighed by its prejudicial effect. First, as
 
 *416
 
 our Supreme Court has noted, the MRE 403 determination is “ ‘best left to a contemporaneous assessment of the presentation, credibility, and effect of testimony
 
 People v Bahoda,
 
 448 Mich 261, 291; 531 NW2d 659 (1995), quoting
 
 VanderVliet, supra
 
 at 81. Further, all evidence is somewhat prejudicial to a defendant—it must be so to be relevant. Here, the similarity of the two acts, as noted above, supports a conclusion that the evidence was probative. The prejudicial effect was limited by the fact that Vitanovski admitted on cross-examination that she did not know if defendant had actually injured Nikolina. The implication that defendant had committed a similar crime in the past was therefore lessened. Furthermore, the judge gave the jury a limiting instruction at the conclusion of the bad acts evidence. This Court has indicated that a limiting instruction such as this one that cautions the jury not to infer that a defendant had a bad character and acted in accordance with that character can protect the defendant’s right to a fair trial.
 
 People v Smith,
 
 243 Mich App 657, 675; 625 NW2d 46 (2000) , remanded on other grounds 465 Mich 928 (2001) . Given these factors, we do not believe that the prejudicial effect of this evidence substantially outweighed its probative value.
 

 Moreover, Vitanovski’s testimony regarding defendant’s urging delay of medical treatment was relevant and probative of a scheme or plan to delay or avoid reporting his assaults for his own protection. As our Supreme Court noted in
 
 People v Sabin (After Remand),
 
 463 Mich 43, 63; 614 NW2d 888 (2000), “evidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are
 
 *417
 
 sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system.” In this case, both incidents involved young female children of defendant’s current girlfriend. In both incidents, defendant attempted to prevent the girlfriend from seeking medical help. Vitanovski testified that she argued with defendant for an hour before he agreed to take her and the child to the hospital. Vitanovski further testified that defendant was concerned that if they took the child to get medical help, they would be accused of child abuse. Similarly, in this case Woodbury testified that defendant did not want her to get medical help for Goble immediately and that defendant agreed to take Woodbury and the child to the hospital only after Woodbury agreed to say that Goble had been injured at Woodbury’s home. Because one could infer from these common features that defendant had a common scheme to assault the female children of his girlfriends, the testimony was relevant and offered for a proper purpose. Thus, defendant is not entitled to a reversal of his conviction on this basis.
 

 Finally, in his supplemental brief, defendant raises numerous issues, including a sufficiency of the evidence argument. “[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.”
 
 People v Wolfe,
 
 440 Mich 508, 515; 489 NW2d 748 (1992). Viewed in a light most favorable to the prosecution, the evidence in this case supports the jury’s conclusion that defendant commit
 
 *418
 
 ted second-degree murder and first-degree child abuse (which resulted in the conviction of first-degree felony murder). A rational trier of fact could have found that the elements of the crimes were proven because the evidence presented showed that defendant intentionally struck the child victim on the head so forcefully as to cause serious brain damage and then knowingly brought about the circumstances that led to her death when he delayed medical treatment. Further, we have reviewed defendant’s other arguments contained in his supplemental brief, including but not limited to his several claims of ineffective assistance, claims of prosecutorial misconduct, and the issue of the voluntariness of his statements, and conclude that all are without merit.
 

 We affirm.
 

 [1]
 

 Since the offense in this case was committed, MCL 350.316(l)(b) has been amended to also include carjacking. 1999 PA 189, effective April 1, 2000.