# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
March 12, 2015

v

ALLEN LANE WALKER,

Defendant-Appellant.

No. 318217
Allegan Circuit Court
LC No. 12-017578-FH

Before: M. J. KELLY, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of possession with intent to deliver less than 50 grams of cocaine, MCL 333.7401(2)(a)(iv). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 20 to 240 months' imprisonment. Defendant appeals as of right. Because the prosecutor presented sufficient evidence to support defendant's conviction, the trial court did not abuse its discretion in admitting other-acts evidence, and there was no plain error in the admission of the investigating police officer's testimony, we affirm.

In the early morning hours of December 11, 2011, defendant was at the Gun Lake Casino. Mark Henrickson, a security officer at the casino, was walking the casino floor. After defendant walked past a certain area, Henrickson saw what he thought was a piece of trash on the floor. He retrieved the object from the floor and discovered that it was a baggie, inside of which were 7 other baggies, containing a total of approximately 8.42 grams of a white material. The substance from one of the seven baggies was tested, and it tested positive for the presence of cocaine. As noted, defendant was convicted of possession with intent to deliver less than 50 grams of cocaine in violation of MCL 333.7401(2)(a)(iv). Defendant now appeals as of right.

On appeal, defendant first argues that his conviction was not supported by sufficient evidence. In particular, defendant contends that, because the casino was open to the general public and no one directly saw defendant with drugs, the evidence presented was insufficient to establish that he possessed the cocaine discovered on the casino floor.

We review a challenge to the sufficiency of the evidence de novo. *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007). We review the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). "All conflicts in the evidence must be resolved in

-1-

favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). Circumstantial evidence and reasonable inferences arising therefrom can constitute satisfactory proof of the elements of the crime. *People v Williams*, 268 Mich App 416, 419; 707 NW2d 624 (2005).

The elements of the charge of possession with intent to deliver less than 50 grams of cocaine are as follows: (1) the defendant knowingly possessed a controlled substance; (2) the defendant intended to deliver the substance to someone else; (3) the substance possessed was cocaine and the defendant knew it was cocaine; and (4) the substance weighed less than 50 grams. See MCL 333.7401(2)(a)(iv); see also *People v Crawford*, 458 Mich 376, 389; 582 NW2d 785 (1998). The essential question relating to possession of narcotics is "whether the defendant had dominion or control over the controlled substance." *People v Konrad*, 449 Mich 263, 271; 536 NW2d 517 (1995). A person's mere presence at a location where drugs are discovered does not prove possession; rather, there must be "some additional connection between the defendant and the contraband." *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748, 754 (1992), amended 440 Mich 508 (1992). In other words, possession is attributed to those who have actual physical possession of drugs as well as those who, under the totality of the circumstances, have a "sufficient nexus" to the contraband to indicate constructive possession. *People v Johnson*, 466 Mich 491, 500; 647 NW2d 480 (2002).

In this case, although no one actually saw cocaine in defendant's possession, the evidence and reasonable inferences arising therefrom was sufficient to allow the jury to conclude beyond a reasonable doubt that defendant possessed the cocaine found on the casino floor. Specifically, Henrickson testified that he was walking in the opposite direction as defendant. Importantly, the area of the casino floor in front of defendant was clear. But, immediately after defendant walked past this area, the baggie was on the floor. Although Henrickson did not see anything fall from defendant's person, no one other than defendant had been in the area where he saw the baggie. Aside from Henrickson's testimony, the jury also viewed a recording of the surveillance footage of the incident. In the recording, Henrickson can be seen picking up the baggie, which appears as a white dot, from the casino floor. The recording also shows that the baggie was not on the floor before defendant walked by the area and that no one else walked in that area between when defendant walked by and when Henrickson picked up the baggie. Given that no one else had passed through this area, a reasonable inference arising from the appearance of the baggie after defendant walked by is that the baggie of cocaine fell, or was dropped, from defendant's person, and thus the jury could reasonably conclude that defendant had possession of the cocaine in question. Accordingly, viewing Henrickson's testimony and the surveillance footage in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant possessed the cocaine. See *Harverson*, 291 Mich App at 175.

Next, defendant argues that the trial court erred in admitting evidence of his 2009 arrest under MRE 404(b). In particular, defendant asserts that this evidence should not have been admitted because the facts surrounding his 2009 arrest were insufficiently similar to the present offense. Given the purportedly dissimilar facts, defendant maintains that there was no proper purpose for the evidence's admission and instead the prosecution impermissibly used the other-acts evidence as propensity evidence. Further, defendant argues that the other-act's probative value was substantially outweighed by the possibility of unfair prejudice and jury confusion.

"The admissibility of other acts evidence is within the trial court's discretion and will be reversed on appeal only when there has been a clear abuse of discretion." *People v Waclawski*, 286 Mich App 634, 669-670; 780 NW2d 321 (2009). A trial court abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. *People v Orr*, 275 Mich App 587, 588-589; 739 NW2d 385 (2007). A trial court's decision on a close evidentiary question ordinarily cannot be an abuse of discretion. *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000).

MRE 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts to . . . prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). See also *Crawford*, 458 Mich at 383. Although other-acts evidence may not be used to demonstrate a person's character or propensity to commit a crime, it may be admissible for other purposes, including, for example, proof of intent or knowledge. MRE 404(b)(1). To introduce evidence under MRE 404(b):

> First, the prosecutor must offer the "prior bad acts" evidence under something other than a character or propensity theory. Second, "the evidence must be relevant under MRE 402 . . . ." Third, the probative value of the evidence must not be substantially outweighed by unfair prejudice under MRE 403. Finally, the trial court, upon request, may provide a limiting instruction under MRE 105. [*People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004) (citations omitted).]

Under this framework, the first question to be addressed is whether the prosecutor has articulated a proper non-character purpose for the admission of the evidence in question. *Crawford*, 458 Mich at 385. A proper purpose for the admission of other-acts evidence is one that seeks to accomplish something other than establishing the defendant's character or propensity to commit the offense. *People v Magyar*, 250 Mich App 408, 414; 648 NW2d 215 (2002). A mere "mechanical recitation" of a proper purpose does not, however, justify admission of other-acts evidence. *Crawford*, 458 Mich at 387. Rather, the prosecutor also bears the burden of showing that the evidence is logically relevant to a proper purpose. *People v Mardlin*, 487 Mich 609, 615; 790 NW2d 607 (2010).

To be relevant, evidence must be both material and probative. *Crawford*, 458 Mich at 388. To be material, the evidence must relate to "any fact that is of consequence to the action." *Id.* (citation omitted). Whether the evidence also has probative value depends on "whether the proffered evidence tends 'to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* at 389-390, quoting MRE 401. The relevance of the evidence depends to varying degrees on the similarity between a defendant's prior bad acts and current offense. See *Id.* at 395-396 & n 13. "Different theories of relevance require different degrees of similarity between past acts and the charged offense to warrant admission." *Mardlin*, 487 Mich at 622. For example, "[w]hen other acts are offered to show intent, logical relevance dictates only that the charged crime and the proffered other acts 'are of the same general category.'" *People v VanderVliet*, 444 Mich 52, 79-80; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). In other words, "mere similarity" between the acts will suffice when the other-acts evidence is offered to establish an actor's intent. *Sabin (After Remand)*, 463 Mich at 64 (citation omitted).

In this case, before trial, the prosecutor filed a written notice of intent seeking to introduce into evidence numerous past drug-related offenses committed by defendant. The prosecutor detailed a lengthy criminal history by defendant including more than 10 arrests for drug-related offenses over a span of nearly 25 years, including the fact that defendant was currently on parole for a drug-related offense. The prosecutor maintained that these charges were relevant to demonstrate defendant's "motive, opportunity, intent, preparation, scheme, plan or system, knowledge, or absence of mistake or accident."[1] In response, defendant filed an objection to the prosecutor's proposed MRE 404(b) evidence and filed a motion in limine to exclude other-acts evidence. Defendant asserted that the prosecutor had taken a "shotgun approach" in his attempt to admit evidence of defendant's criminal history by failing to sufficiently distinguish between his various offenses or to establish relevant, individualized grounds upon which to admit each piece of other-acts evidence.

On the first day of trial, the trial court heard arguments on the prosecutor's efforts to introduce other-acts evidence under MRE 404(b). Most relevant to this appeal, the trial court granted the prosecutor's request to admit evidence relating to defendant's arrest in 2009 for possession with intent to deliver cocaine and operating a drug house. In arguing for the admission of this evidence in particular, the prosecutor explained that in 2009 defendant was found, at his residence, with cocaine packaged in small baggies in a quantity to indicate an intent to distribute. In the home, police also found cash, a scale, additional baggies, and a razor with cocaine residue on it. Compared to the present case, the prosecutor emphasized similarities insofar as in both cases the substance was cocaine in a quantity and packaging to indicate an intent to distribute. Given these similarities, the prosecutor argued that the 2009 incident was relevant to establishing defendant's intent, knowledge that the substance was cocaine, absence of mistake, and plan or scheme. The prosecutor also attempted to offer evidence of a 2005 incident in which defendant was found with five crack rocks and a crack pipe, as well as evidence that, more generally, defendant had a lengthy history of drug arrests which the prosecutor asserted were relevant to establishing defendant's intent and knowledge.

The trial court weeded through the prosecutor's various pieces of proposed evidence and, as noted, admitted only the other-acts evidence related to the 2009 incident. The trial court forbade mention of defendant's parole status, and the trial court excluded evidence of the 2005 incident based on the conclusion that the presence of the crack pipe indicated the possibility of personal consumption rather than a plan for distribution and thus this evidence amounted to

---

[1] Defendant contends that this laundry list recitation of proper purposes does not establish the admissibility of other-acts evidence. We agree that the prosecutor's written notice of intent to offer other-acts evidence contained a rather mechanical recitation of nearly every proper purpose listed in MRE 404(b). Nonetheless, during oral argument before the trial court relating to the admission of the evidence, the prosecutor plainly went beyond a mechanical recitation and detailed specifically the reasons why the prosecutor believed the evidence to be relevant to defendant's knowledge, intent, absence of mistake, and plan or scheme. As discussed *infra*, despite the rote repetition of proper purposes in the written notice, we are satisfied that the prosecutor met his burden of establishing the evidence's relevance to a proper purpose.

impermissible propensity evidence. The trial court also prevented the prosecutor from mentioning defendant's various possession offenses in its case-in-chief. Ultimately, in admitting evidence relating to the 2009 incident, the trial court analyzed the evidence within the MRE 404(b) framework and reasoned that the 2009 incident was relevant to show an intent to distribute and that there was a plan or scheme for separately packaging cocaine.

On appeal, considering the evidence in question and the trial court's analysis of its relevance, we conclude that the trial court did not abuse its discretion in permitting the prosecutor's use of other-acts evidence under MRE 404(b). First, the trial court appropriately recognized that the prosecutor identified a proper purpose for the admission of the evidence, specifically that defendant's 2009 arrest was relevant to show that defendant knowingly possessed the cocaine, that he intended to deliver it, and that he had a plan or scheme. Second, the trial court did not abuse its discretion in concluding that the evidence was material because, by pleading not guilty, defendant placed all elements of the offense "at issue," including the question of his intent to distribute and his knowledge of the substance. *Crawford*, 458 Mich at 389. See also MCL 333.7401(2)(A)(iv).

Third, given the similarities between the current offense and defendant's conduct relating to his 2009 arrest, in particular his possession of numerous individual baggies containing small portions of cocaine in a quantity suggestive of an intent to distribute, the two offenses were within the same "general category." That is, both offenses involved possession of cocaine and circumstances indicative of an intent to distribute. See generally *Wolfe*, 440 Mich at 524-525 (recognizing intent may be inferred from the quantity of narcotics and the manner of packaging). Because defendant's conduct in both cases fell within the same "general category," the trial court did not abuse its discretion in concluding that the 2009 incident was sufficiently similar to be logically relevant to the issue of defendant's intent in the present case.[2] *VanderVliet*, 444 Mich at 79-80; *Sabin (After Remand)*, 463 Mich at 64.

Further, the trial court did not abuse its discretion under MRE 403 by concluding that the probative value of the evidence relating to defendant's 2009 arrest was not substantially outweighed by the danger of unfair prejudice or confusion of the issues. All relevant evidence is

---

[2] We note that, in addition to the issue of intent, the trial court concluded that the other-acts evidence was sufficiently similar to have relevance to whether defendant was engaged in a common plan or scheme. Such a theory of relevance requires a higher degree of similarity, specifically a "concurrence of common features" such that the acts "are naturally explained as manifestations of a general plan." *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002). Even if the 2009 incident was not sufficiently similar to have relevance on this basis, the trial court nonetheless did not abuse its discretion in concluding that the evidence had relevance to prove something other than bad character because, as we have discussed, the trial court reasonably concluded that the evidence had probative value relating to the issue of intent. See *People v Yost*, 278 Mich App 341, 406; 749 NW2d 753 (2008). Thus, despite any arguable error in finding relevance to the question of a common scheme or plan, the trial court did not abuse its discretion in determining the evidence was relevant to a proper purpose.

prejudicial to some extent, and the possibility of prejudice does not make the admission of evidence unfair. *People v Murphy (On Remand)*, 282 Mich App 571, 582-583; 766 NW2d 303 (2009). "Unfair prejudice exists when there is a tendency that evidence with little probative value will be given too much weight by the jury." *People v McGhee*, 268 Mich App 600, 613-614; 709 NW2d 595 (2005). "This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Id.* (quotation marks and citation omitted). In comparison, confusion of the issues generally occurs when "the introduction of the evidence would have a tendency to divert the trier of fact's attention from the truly significant issues in the case." 1 Robinson & Longhofer, Michigan Court Rules Practice, Evidence (3d ed), § 403.4.

In this case, where the trial court determined the evidence to be probative on the issue of intent and where there is no indication that the evidence injected extraneous considerations into trial, that it diverted the jury's attention, or that it was given undue weight, we cannot see that the trial court abused its discretion in determining that the evidence's probative value was not substantially outweighed by the risk of unfair prejudice or confusion. Moreover, any potential for prejudice or confusion was mitigated by the trial court's cautionary instruction to the jury: that they could "not convict the defendant . . . because [they] think he's guilty of other bad conduct." See *Orr*, 275 Mich App at 593. Ultimately, determinations under MRE 403 are best left to the trial court, *VanderVliet*, 444 Mich at 81, and, contrary to defendant's claims of unfair prejudice and jury confusion, we find no basis for concluding that the trial court abused its discretion in admitting the 2009 evidence.

Finally, defendant also argues that Sergeant Mike Brown's testimony, in which Brown indicated that the surveillance footage showed the baggie falling from defendant's person, invaded the province of the jury. Alternatively, defendant asserts that defense counsel rendered ineffective assistance by failing to object to Brown's testimony in this regard.

Because defendant did not object to Brown's testimony at trial, the issue is unpreserved. MRE 103(a)(1); *People v Aldrich*, 246 Mich App 101, 113; 631 NW2d 67 (2001). We review unpreserved claims of evidentiary error for plain error affecting the defendant's substantial rights. *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011).

A witness who is not testifying as an expert may offer an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. In a criminal case, a witness may not, however, provide an opinion on the guilt or innocence of the defendant. *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012). Further, a witness may not give an opinion on a matter when the jury is equally capable of reaching its own conclusion on the issue because such an opinion invades the province of the jury. *People v Drossart*, 99 Mich App 66, 79-80; 297 NW2d 863 (1980). For example, typically, a lay witness who has viewed a video may not identify a defendant as the individual depicted in the video or photograph when the jury is equally capable of reaching its own conclusions regarding the images shown. See *People v Fomby*, 300 Mich App 46, 52-53; 831 NW2d 887 (2013).

In this case, Brown testified that, after he spoke with defendant, he viewed the surveillance footage of the incident. In particular, based on the footage, Brown testified that the floor in the area of the casino in question appeared "clear" and that as defendant "walked past it . . . appeared to [Brown] as though a bag dropped out from either his pocket or somewhere on his person and hit the floor, and then was retrieved by the security personnel." Defendant argues on appeal that this testimony impermissibly invaded the province of the jury because the jury was equally as capable as Brown of determining what the surveillance footage showed.

While we generally agree that it would be improper for Brown to invade the province of the jury by opining on the contents of the video, in context it is clear that Brown offered his testimony, not to establish the contents of the video or as an opinion on defendant's guilt, but to describe the process of his investigation. That is, the fact that evidence may not be used for one purpose does not render it inadmissible for other purposes, *People v Petri*, 279 Mich App 407, 415; 760 NW2d 882 (2008), and generally, police officers may explain the steps of their investigation from their personal perceptions, *Heft*, 299 Mich App at 83. Taken in context, it appears clear that Brown's testimony was offered to explain the steps of his investigation, including his efforts to obtain a copy of the surveillance footage and his interview with defendant based on having viewed the footage. Specifically, Brown testified that, after he arrived at the casino and talked with Henrickson, he spoke with defendant, who denied possession of the cocaine. Brown testified that he then met with security guards in the surveillance room, at which time he viewed the surveillance footage. In his testimony, Brown described what the footage purportedly showed and he confirmed that the footage shown to him at the casino was "essentially the same footage" shown to the jury at trial. Brown testified that, after viewing the footage, he took steps to secure a copy of the footage by requesting that the casino have a copy made. According to Brown's testimony, after viewing the footage, he spoke with defendant a second time to again confront defendant about the cocaine based on what the video depicted. Accordingly, in context, Brown's testimony regarding what he saw on the surveillance footage was part of his explanation of the steps of his investigation, and not an improper commentary on defendant's guilt or innocence. Cf. *id.* Because such testimony was "helpful to a clear understanding of" Brown's testimony, the testimony was not improper lay opinion testimony, see MRE 701, and defendant has not shown plain error affecting his substantial rights.

Moreover, under a plain error standard, even assuming some error in the admission of Brown's testimony, reversal is not required because defendant has not made the requisite showing of prejudice. The jury had ample opportunity to view the video and assess its contents, and they were in fact told they could reject a witness's testimony and that police officers should be judged by the same standard as any other witness. Moreover, defendant does not dispute that he was at the casino or walked by the area in question. Furthermore, Henrickson personally observed defendant in the casino and he recounted at trial how he observed the baggie on the floor after defendant walked past the area in question. In short, there is ample evidence that defendant dropped the bag of cocaine and Brown's testimony, even assuming it was improper, did not affect the outcome of the proceedings. Consequently, defendant has not shown plain error affecting his substantial rights and he is not entitled to relief on the basis of Brown's testimony. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

We also reject defendant's alternative argument that defense counsel was ineffective for failing to object to Brown's testimony. Any objection to Brown's testimony regarding what he

saw on the surveillance footage, which occurred while he was explaining the steps of his investigation, would have been futile because, as noted, a police officer may explain the steps of his investigation. *Heft*, 299 Mich App at 83. Defense counsel was not ineffective for failing to make a futile objection. *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998). Moreover, as discussed, aside from Brown's testimony, there was ample evidence, including the video and Henrickson's testimony, supporting the conclusion that defendant dropped the baggie in question. In these circumstances, defendant has not shown that, but for counsel's failure to object, there was a reasonable probability of a different outcome and thus defendant has not shown he was deprived of the effective assistance of counsel. See *id.* at 181.

Affirmed.

/s/ Michael J. Kelly
/s/ William B. Murphy
/s/ Joel P. Hoekstra